# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 19-0735 (CKK) |
| MARGARET WEICHERT, in her official capacity as Acting Director of the United States Office of Personnel Management, et al. | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' MOTION TO DISMISS

Defendants Margaret Weichert, Acting Director of the Office of Personnel Management, and the United States Office of Personnel Management, pursuant to Fed. R. Civ. P. 12(b)(1), move to dismiss the Complaint for lack of subject matter jurisdiction.

In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities. A proposed Order consistent with this motion is attached.

Respectfully submitted,

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. Bar # 924092
Chief, Civil Division


*/s/ Marina Utgoff Braswell*
MARINA UTGOFF BRASWELL

                                                D.C. Bar #416587
Assistant United States Attorney,
United States Attorney's Office – Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Tel: (202) 252-2561
Marina.Braswell@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-0735 (CKK) |
| MARGARET WEICHERT, in her official capacity as Acting Director of the United States Office of Personnel Management, et al. | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

Plaintiff brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. 702, alleging that defendants have issued a policy that improperly reduces a retirement benefit for divorced retirees, including members of plaintiff's organization, that is contrary to law, issued without complying with APA rulemaking requirements, and improperly applied retroactively. Although plaintiff is wrong on all counts, this case must be dismissed for lack of jurisdiction. The claims plaintiff raises concern federal employee benefits, which are subject to review exclusively under the Civil Service Reform Act ("CSRA"). The CSRA provides an available remedial process for consideration of plaintiff's claims, but that review does not lie with this Court. Instead, plaintiff must bring its challenges to the Merit Systems Protection Board ("MSPB") and, if dissatisfied with a final decision obtained before the MSPB, appeal may be sought to the Federal Circuit. Furthermore, plaintiff lacks Article III standing to pursue

claims under the APA and the CSRA.

Because this Court lacks jurisdiction over plaintiff's claims, this case should be dismissed.

## **ARGUMENT**

It is axiomatic that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Lehman v. Naskshian, 453 U.S. 156, 160 (1981) (*quoting* United States v. Testan, 424 U.S. 392, 399 (1976), *quoting* United States v. Sherwood, 312 U.S. 584, 586-87 (1941)); Lombard v. United States, 690 F.2d 215, 218 (D.C. Cir.1982), *cert. denied*, 462 U.S. 1118 (1983). Moreover, the "'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" Lehman, 453 U.S. at 161 (quoting Soriano v. United States, 352 U.S. 270, 276 (1957)). Thus, a party bringing a claim against a federal agency must identify not only the source of his or her substantive right but also a specific waiver of sovereign immunity that permits his or her claim against a federal agency to be heard in this forum. United States v. Mitchell, 445 U.S. 535, 538 (1980).

Despite plaintiff's attempt to invoke this Court's power to issue injunctive and declaratory relief, plaintiff has failed to meet that burden here. The only waiver of sovereign immunity applicable to plaintiff's retirement benefits claims is that set forth in 5 U.S.C. § 8461(e). As the Supreme Court held in Lindahl v. OPM, 470 U.S. 768 (1985), and United States v. Fausto, 484 U.S. 439, 449, 452 (1988), the terms of that waiver of sovereign immunity only permit appeal of an adverse decision from the MSPB to the Federal Circuit. The holdings in those cases apply with full force here.

Plaintiff incorrectly alleges that OPM engaged in rulemaking and offers alternative theories about what the plain language of the statutory provisions in question could possibly mean. In fact, OPM has applied the statute as Congress wrote it and the words of that provision are neither vague nor ambiguous. OPM management corrected a failure to apply an already clear and unambiguous statute as written to accomplish a statutory obligation; it did not promulgate or initiate an administrative proceeding. Thus, this is not a case where plaintiff seeks to have an OPM rule set aside based on a rulemaking defect. Therefore, there is no basis for district court jurisdiction here to conduct a pre-enforcement review of OPM rulemaking.

Accordingly, plaintiff's attempt to litigate OPM's interpretation of a FERS retirement provision in this Court should be rejected and the Complaint dismissed for lack of subject matter jurisdiction.

Furthermore, plaintiff does not challenge any personnel decisions or benefits determinations made in individual cases. Instead, plaintiff asserts that OPM's "failure to follow Sections 8421 and 8467 constitutes an action that is arbitrary, capricious, and contrary to law in violation of 5 U.S.C. § 706(2)(A)." Compl. ¶ 32. Plaintiff's requested relief does not seek individual relief for specific employee claims and therefore plaintiff lacks standing.

## I.     Plaintiff's Claims Must be Dismissed as the Civil Service Reform Act is the Exclusive Remedy Available to Plaintiff

Plaintiff alleges this Court has jurisdiction under the APA to review its claims. Compl. ¶ 1. Plaintiff is wrong. It is well settled that the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." Bowen v. Massachusetts, 48 U.S. 879, 903 (1988).

> Further, 'the APA excludes from its waiver of sovereign immunity claims for which an adequate remedy is available elsewhere' as well as 'claims seeking relief expressly or impliedly forbidden by another statute,' *Fornaro v. James*, 416

F.3d 63, 66 (D.C. Cir. 2005), and the APA as a whole does not apply 'to the extent that [other] statutes preclude judicial review,' 5 U.S.C. § 701(a)(1). Thus, where 'Congress has provided a plaintiff with statutory schemes and remedies through which the plaintiff may seek relief, . . . an APA claim is properly dismissed.'

Kursar v. Transportation Sec. Admin., 581 F Supp.2d 7, 15 (D.D.C. 2008); see, e.g., Garcia v. Vilsack, 563 F.3d 519, 523 (D.C. Cir. 2009) (clear and convincing evidence of legislative intent to create alternate remedy precludes APA review).

As explained below, the Civil Service Reform Act ("CSRA") is a remedial scheme which precludes APA review.

### A. The Civil Service Reform Act of 1978

In 1978, Congress enacted the CSRA, Pub. Law No. 95-454, 92 Stat. 1111 (October 13, 1978). Congress enacted the CSRA to reform a civil service system that consisted of an "outdated patchwork of statutes and rules built up over almost a century." Fausto, 484 U.S. at 444-45. The pre-existing system involved "haphazard arrangements for administrative and judicial review of personnel action." Id.

> The CSRA:
>
> comprehensively overhauled the civil service system . . . creating an elaborate 'new framework for evaluating adverse personnel actions against [federal employees].' It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *U.S. v. Fausto*, 484 U.S. 439, 443 (1988) (citations omitted). The CSRA remedial scheme is the "comprehensive system for reviewing personnel action taken against federal employees." Id. at 455.

Kleiman v. U.S. Dep't of Energy, 742 F. Supp. 697, 698-99 (D.D.C. 1990). See, e.g. Fausto, 484 U.S. at 443 ("Congress 'comprehensively overhauled the civil service system,' creating an elaborate 'new framework for evaluating adverse personnel actions against federal employees.'" Id. at 443 (*quoting* Lindahl, 470 U.S. at 773-74); see also Bush v. Lucas, 462 U.S. 367, 385 (1983) (stating that the CSRA is "an elaborate comprehensive scheme that encompasses

4

substantive provisions forbidding arbitrary action by supervisors and procedures – administrative and judicial – by which improper action may be redressed").

This "elaborate" and "comprehensive" scheme was carefully designed to encompass all types of employment-related grievances arising from the federal workplace, regardless of whether the grievances are specifically enumerated in the federal employment statutes.  See Filebark v. U.S. Dep't of Transp., 555 F.3d 1009, 1010 (D.C. Cir. 2009) ("[W]e treat the CSRA and Congress's related employment statutes as *covering the field of federal employee claims.*") (emphasis added).

By enacting the CSRA, Congress abolished the Civil Service Commission, created OPM, and delegated to it the responsibility for administering federal retirement benefits.  See 5 U.S.C. § 8347(a); Lindahl, 470 U.S. at 797-98; Fornaro v. James, 416 63, 64 (D.C. Cir. 2005).

### B. The Exclusive Path to Judicial Review under the CSRA

At the time that the CSRA was enacted, the Federal Employees Retirement System ("FERS") at issue in this case did not exist.  Instead, federal employees' retirement benefits were encompassed in the Civil Service Retirement System ("CSRS"), codified at 5 U.S.C. §§ 8331 *et. seq.,* FERS was enacted by Pub. Law No. 99-335, 100 Stat. 514 (June 6, 1986).

Both CSRS and FERS set up an identical scheme for review by OPM, then the MSPB, and finally the Federal Circuit. See 5 U.S.C. § 8347(b)under CSRS ("[t]he Office [OPM] shall adjudicate all claims under this subchapter [5 U.S.C. §§ 8331 et seq.]"); see also, 5 U.S.C. § 8461(c) under FERS, ("[t]he Office [OPM] shall adjudicate all claims under the provisions of this chapter [5 U.S.C. §§ 8401 et seq.] administered by the Office.".  Second, the MSPB has virtually identical review under CSRS and FERS. See 5 U.S.C. § 8347(d)(1) ("[a]n administrative action or order affecting the rights or interests of an individual or of the United

5

States under this subchapter [5 U.S.C. §§ 8331 *et seq.*] administered by the Office may be appealed to the [MSPB] under procedures prescribed by the Board"); see also, 5 U.S.C. § 8461(e)(1) ("[a]n administrative action or order affecting the rights or interests of an individual or of the United States under the provisions of this chapter [5 U.S.C. §§8401 *et seq.*] administered by the Office may be appealed to the [MSPB] under procedures prescribed by the Board.")  Thereafter, for both CSRS and FERS, judicial review is available exclusively in the Federal Circuit.  See 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9).

Where Congress enacts legislation, which is nearly identical in its language to an earlier Act and shares a common purpose with that earlier act, it is appropriate to interpret the language of the later-enacted statute in accord with an established judicial interpretation of the earlier statutory provision.  See, e.g., Oscar Mayer and Co. v. Evans, 441 U.S. 750, 756 (1979); Northcross v. Memphis Bd. of Educ., 412 U.S. 427, 428 (1973).

By providing the MSPB with a primary role in the administrative resolution of disputes under the CSRA, Congress "enable[d] the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action, avoid[ed] an 'unnecessary layer of judicial review' in lower federal courts, and '[e]ncourage[d] more consistent judicial decision. . .'" Fausto, 484 U.S. at 449 (citation omitted).

Specifically, an aggrieved party may appeal an adverse administrative decision by OPM to the MSPB, and thereafter, "a petition to review a final order or final decision of the [MSPB] ***shall*** be filed in the United States Court of Appeals for the Federal Circuit." 5 U.S.C. § 7703(b)(1) (emphasis added); 28 U.S.C. § 1295(a)(9) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction […] of an appeal from a final order or final decision of the Merit Systems Protection Board"). Thus, "[r]eview by OPM/MSPB/Federal

Circuit is the exclusive remedy for claims regarding retirement benefits of federal workers." Eisenbeiser v. Chertoff, 448 F. Supp. 2d 106, 111-112 (D.D.C. 2006).

In fact, two separate individual appellants, who have made the same arguments raised by plaintiff in this case, have properly pursued their claims under FERS by appealing their final OPM decisions to the MSPB, following the exclusive jurisdictional remedial scheme established by Congress under 5 U.S.C. § 8461(e).  Moreover, the Acting Director of OPM (the named defendant in this matter) has intervened in both of these pending cases, which will require the Board to issue a precedential decision.  See Moulton v. Office of Personnel Management, MSPB Docket # DE-0841-18-0053-I-1, and Simon v. Office of Personnel Management, MSPB Docket # CH-0845-18-0088-I-1.  The appellants in these appeals are currently awaiting final decisions from the full Board.

Not only is the intervention of the Acting Director of OPM significant in its own right, because she is exercising a power that Congress uniquely conferred upon the OPM Director alone, but because the existence of that unique statutory authority, in and of itself, demonstrates that Congress carefully thought through the highly reticulated CSRA scheme.  The CSRA permits any individual to seek judicial review only in the Federal Circuit of a matter within the jurisdiction of MSPB, but forbids every agency from seeking judicial review at all – with one exception.  The Director of OPM may seek judicial review in the Federal Circuit either by intervening in a matter before MSPB or by seeking judicial review of a final decision of the Board, after asking the Board to reconsider its decision.  In either case the Director must make a determination that an erroneous decision would have or has had a "substantial impact on civil service law."  In so doing, she is not representing the affected agency, even if the agency is her own, but is intervening to preserve the interests of the entire Government in her capacity as

regulator and overseer of the Federal civil service.  This carefully wrought system may not be breached, and the Director's exceptional authority sundered, by an adversely-affected individual, or worse, an organization bereft of standing, to deprive the Director of her statutory authority and right to articulate her views in the manner prescribed by Congress.

Furthermore, the Court of Appeals for this Circuit in Fornaro made clear that this remedial scheme applies not just to individual claims concerning benefits but also to a system-wide challenge to OPM policy concerning the manner in which OPM addresses an entire class of benefits.  In Fornaro, the plaintiffs, which included law enforcement officers as a group, sought an order requiring OPM to notify class members that they were entitled to higher disability benefits and to pay them the higher benefits.  The plaintiffs argued that the APA provided the requisite waiver of sovereign immunity for them to proceed with their claims in district court.

The Court of Appeals readily rejected this approach, stating unequivocally that "[w]e hold that the APA's waiver is inapplicable because Congress has prescribed a route other than suit under the APA for vindicating claims for civil service benefits." Id., 416 F.3d at 64.  That prescribed route, the Court held, was through OPM to the MSPB and then to the Federal Circuit. Id., 416 F.3d at 68.  The Court concluded that the system-wide challenge to OPM policy did not alter this conclusion.  As the Court aptly noted, "[a]llowing an alternative route to relief in the district court because plaintiffs frame their suit as a systemwide challenge to OPM policy would substitute an entirely different remedial regime for the one Congress intended to be exclusive . . ." Id., 416 F.3d at 68.

The Court of Appeals' reasoning is equally applicable to plaintiff here, who is subject to the exclusive review provisions and identical OPM - MSPB - Federal Circuit remedial scheme required under FERS.  Eisenbeiser, 448 F. Supp.2d at 111-12.  Indeed, the Federal

Circuit has held that the Supreme Court's interpretation of the statutes governing review of retirement decisions under CSRS (§§ 8347(c), (d)(1) and (2)) apply to the "parallel provisions" for review of retirement decisions under FERS (§§ 8461(d), (e)(1) and (2)). Anthony v. Office of Personnel Mgmt., 58 F.3d 620, 622, 626 (Fed. Cir. 1995) ("Similarity of language and purpose argues strongly for applying the same interpretation to both § 8461 and § 8347.").

Although the APA provides relief in district court for a person suffering legal wrong due to agency action, APA jurisdiction in district court is barred where "the APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere, and . . . claims seeking relief expressly or impliedly forbidden by another statute." Fornaro, 416 F.3d at 66 (*quoting* Transohio Savings Bank v. OTS, 967 F.2d 598, 607 (D.C. Cir. 1993)); see also 5 U.S.C. § 702(1)-(2).  Plaintiffs cannot seek an APA waiver of sovereign immunity where a remedy is otherwise available through FERS exclusive review provisions. See 5 U.S.C. § 702; 5 U.S.C. § 8461(c); 5 U.S.C. § 8461(e)(1).

The three counts in the Complaint all relate to OPM's interpretation of statutory provisions affecting the allocation of retirement benefits to divorced retirees.  The claims channeling provision of the CSRA is plaintiff's exclusive remedy for challenging an OPM decision concerning benefits properly payable to federal former employees.  Under that statute, jurisdiction does not lie in this Court.

## II. There is no Basis for District Court Jurisdiction here to Conduct Pre-Enforcement Review of OPM Rulemaking

The issue underlying this suit, which is improperly brought before this Court, is that OPM representatives failed to apply the plain language of a statute, which was unambiguous, as Congress intended.  OPM made a correction, as it was obligated to do, resulting in the appropriate application of law.  Although plaintiff alleges that OPM engaged in rulemaking, and

9

presents alternative theories about what the plain language of the statutes in question "could" possibly mean, in fact OPM has applied the statute as Congress wrote it and the words of that provision are neither vague nor ambiguous. OPM has not engaged in rulemaking nor adopted some new "interpretation" of the language of the statute. Instead, OPM management observed a failure to apply an already clear and unambiguous statute as written and made a correction to accomplish that statutory obligation. This was an error that OPM was obligated to correct, retroactive to the effective date of the benefits payable.

Where the statutory language is clear, it must control. <u>Chevron, U.S.A., Inc.</u> v. <u>Nat: Res. D4 Council, Inc.</u>, 467 U.S. 837, 84243 (1984) ("If the intent of Congress is clear, that is the end of the matter; for ... the agency, must give effect to the unambiguously expressed intent of Congress."); <u>Langston</u> v. <u>Office of Pers. Mgmt.</u>, 395 F.3d 1349, 1351 (Fed. Cir. 2005) ("In construing a statute, our analysis begins with the language of the statute, and where the statutory language is clear and unambiguous, it generally ends there as well.").

There is no basis for district court jurisdiction here to conduct pre-enforcement review of OPM rulemaking. Plaintiff fails to identify an administrative proceeding that OPM has initiated, nor can plaintiff, because OPM has been relying on the statute itself, which is clear on its face. Accordingly, this is not a case where plaintiffs seek to have an OPM rule set aside based on a rulemaking defect.

> 'The APA has often been found to provide jurisdiction for a federal court to hear union challenges to agency regulations or policies of general application on the grounds that they were inconsistent with a statute or the Constitution.' *NTEU v. Chertoff*, 385 F.Supp.2d 1, 23 (D.D.C.2005), *partially reversed on other grounds*, 452 F.3d 839 (D.C.Cir.2006) (citing *NTEU v. Horner*, 854 F.2d 490 (D.C.Cir.1988) (reviewing under the APA whether an OPM rule exempting positions from competitive service was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law")). In *NTEU v. Cornelius*, 617 F. Supp. 365 (D.D.C.1985), the court noted that even though aggrieved federal employees are required to bring cases involving individual rights in accordance with the CSRA, the CSRA does not 'insulate OPM from direct judicial

> review of challenges to *rulemaking* under the APA' and <u>the court had jurisdiction over an APA challenge to the promulgation of a final rule</u> governing appeal procedures of certain adverse employment actions.

<u>Nat'l Treasury Employees Union</u> v. <u>Whipple</u>, 636 F. Supp.2d 63, 70 (D.D.C. 2009) (emphasis added).

This case, however, does not involve judicial review of an agency regulation. The claims channeling provisions of the CSRA bar challenges in district court that seek review of individual personnel decisions, including decisions related to retirement benefits. The calculation of an annuity based on the application of an unambiguous statute in the present matter is thus within the CSRA exclusive scheme of review. Plaintiff is free to advance its claims before the proper tribunal; the CSRA requires this type of challenge be brought before the MSPB and its reviewing courts.

**III.    <u>Plaintiff Lacks Standing to Pursue Its Claims Before this Court</u>**

In addition to the reasons discussed above, this action should be dismissed for lack of Article III standing. Although the Complaint alleges that plaintiff's members have been deprived of benefits they would otherwise receive, plaintiff essentially asks this Court to assume standing, based on hypotheticals that may or may not exist. For this reason, even if one or more annuitants represented by plaintiff has standing, plaintiff does not have standing as an association to proceed on their behalf. At a minimum, plaintiff should be required to join, as co-plaintiff in this lawsuit, an individual annuitant plaintiff claims is concretely and adversely affected by the alleged adverse action taken by OPM.

Before a court may proceed to the merits of any claim, the plaintiff must demonstrate that it has constitutional standing to sue. U.S. Const. Art. 3. Standing is a necessary predicate to any exercise of federal jurisdiction, and if it is lacking, then the dispute fails to present a proper case

or controversy under Article III, and federal courts lack subject-matter jurisdiction to decide the case.  Dominguez v. UAL Corp., 666 F.3d 1359, 1361 (D.C.Cir.2012); Huron v. Berry, 12 F. Supp. 3d 46, 51 (D.D.C. 2013), aff'd sub nom. Huron v. Cobert, 809 F.3d 1274 (D.C. Cir. 2016).

### A. General Standing Principles

The "judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts," but is limited to the resolution of actual "cases" and "controversies."  Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982).  The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  And "the party invoking federal jurisdiction bears the burden of establishing its existence."  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998).

An association, including the plaintiff association here, "'has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 553 (1996) (*quoting* Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

The first prong of this associational standing inquiry requires plaintiff to show that one or more of its members meets the traditional test for individual standing:  A plaintiff first "must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S.

at 560 (citations, footnote, and internal quotation marks omitted).  Importantly, injury-in-fact requires more than "'an ingenious academic exercise in the conceivable.'" Alaska Legislative Council v. Babbitt, 181 F.3d 1333, 1339 (D.C. Cir. 1999) (*quoting* United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 688 (1973)).  "Second, there must be a causal connection between the injury and the conduct complained of …." Lujan, 504 U.S. at 560.  In particular, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  Id. (*quoting* Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)).  "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Lujan, 504 U.S. at 560 (internal quotation marks omitted).

Plaintiff says it represents the interests of over 27,000 current and retired law enforcement officers and provides legal assistance and representation to its members; however, those representations do not give it standing to seek declaratory and injunctive relief under the Constitution.  Moreover, plaintiff has not alleged any injury that would be "redressable by a favorable ruling." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013).

Plaintiff may sue under the APA, on which it relies, only if it was adversely affected or aggrieved by agency action.  5 U.S.C. § 702.  The Supreme Court has explained that the "adverse effect" requirement "acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." Doe v. Chao, 540 U.S. 614, 624 (2004).  Only "an individual subjected to an adverse effect has injury enough to open the courthouse door."  Id. at 624-25.  Plaintiff has not alleged any basis for standing or offered any specific instances of injuries to its members resulting from the challenged alleged action.  The

13

relief that plaintiff seeks would require an inquiry into specific divorce decrees and agreements of the individuals that plaintiff purports to represent. While OPM recognizes that there are pending cases properly before the MSPB, it has no way of knowing if these specific individuals are members of plaintiff's association. Plaintiff has not identified an "adverse effect" that would open the courthouse door to the claims raised in this case.

### B. The Complaint Fails to Identify Any Annuitant Who Has Standing to Challenge the Actions Alleged by Plaintiff

The Complaint fails to identify any federal annuitant who has suffered a cognizable injury-in-fact that is traceable to the alleged adverse actions taken by OPM and redressable through judicial invalidation of OPM's application of the law. Instead, plaintiff essentially asks the Court to assume that one or more such annuitants must exist somewhere within its membership. But standing requires showings, not assumptions. See NTEU v. Horner, 659 F. Supp. 8, 12 (D.D.C. 1986) ("the Court cannot rest its finding of standing, and thus its exercise of jurisdiction, solely on an assumption"); see also Renne v. Geary, 501 U.S. 312, 316 (1991) (federal courts should presume that they lack jurisdiction "unless the contrary appears affirmatively from the record."). The traceable and redressable injury-in-fact demanded by Article III must be injury to actual individuals, not to some vague hypothetical composite. See Am. Immigration Lawyers Ass'n v. Reno, 18 F. Supp. 2d 38, 51 (D.D.C. 1998) (rejecting associational standing where plaintiff association can "identify only vague categories of members that might suffer harm" and "can point to no identifiable member or members for which the Court can evaluate the harm"), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000).

## **CONCLUSION**

For the foregoing reasons, defendants submit that this case should be dismissed for lack of subject matter jurisdiction.

>Respectfully submitted,
>
>JESSIE K. LIU
>D.C. Bar #472845
>United States Attorney
>
>DANIEL F. VAN HORN
>D.C. Bar # 924092
>Chief, Civil Division
>
>
>*/s/ Marina Utgoff Braswell*
>MARINA UTGOFF BRASWELL
>D.C. Bar #416587
>Assistant United States Attorney,
>United States Attorney's Office – Civil
>Division 555 4th Street, N.W.
>Washington, D.C.  20530
>Tel: (202) 252-2561
>Marina.Braswell@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION, ) ) ) )  Plaintiff,  ) ) v. ) ) MARGARET WEICHERT, ) in her official capacity as acting ) Director of the United States ) Office of Personnel Management, ) et al. ) ) Defendants. ) ) | Civil Action No. 19-0735 (CKK) |

## **ORDER**

Upon consideration of defendants' motion to dismiss, plaintiff's responding opposition, and the entire record in this case, and it appearing that the Court lacks jurisdiction to hear plaintiff's claims, it is hereby

ORDERED that defendants' motion is granted; and it is further

ORDERED that this case is dismissed.

_____
UNITED STATES DISTRICT JUDGE