# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION, | |
| Plaintiff, | |
| v. | Civil Action No. 19-735 (CKK) |
| MARGARET WEICHERT, et al. | |
| Defendants. | |

## PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: August 29, 2019

Respectfully submitted,

/s/ Ryan E. Griffin
Ryan E. Griffin, D.C. Bar Number 1007078
Daniel M. Rosenthal, D.C. Bar Number 1010473
James & Hoffman, P.C.
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
(202) 496-0500
(202) 496-0555 (fax)
regriffin@jamhoff.com
dmrosenthal@jamhoff.com

Attorneys for Plaintiff Federal Law Enforcement Officers Association

## TABLE OF CONTENTS

PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' ............................................. i

TABLE OF AUTHORITIES ..................................................................................................... iii

    I.    *AFGE* does not speak to this Court's jurisdiction over APA claims. .................................. 1

        a.    The claim preclusion analysis required under APA Section 704 is distinct from the preclusion analysis applicable to non-APA claims. ............................................................... 1

        b.    The administrative remedies available to certain affected employees through the MSPB are not of the "same genre" as those available under the APA. .............................................. 4

    II.    *AFGE* has no bearing on whether FLEOA has associational standing. .............................. 6

CONCLUSION ........................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Advocates for Highway & Auto Safety v. FHA*, 28 F.3d 1288 (D.C. Cir. 1994) ............................5

*Am. Fed. of Gov't Employees ("AFGE") v. Trump*, (D.C. Cir. 2019)
No. 18-5289, 2019 BL 261655 ...................................................................................1, 2, 3, 6

*Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037 (1987) .........................................................5

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)..............................................................1, 2

*Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986).................................3

*Filebark v. DOT*, 555 F.3d 1009 (D.C. Cir. 2009) .........................................................6

*Chamber of Commerce of U.S. v. DOL*, 174 F.3d 206 (D.C. Cir. 1999)........................5

*Citizens for Responsibility & Ethics in Washington ("CREW") v. Dep't of Justice*,
*846* F.3d 1235 (D.C. Cir. 2017)..................................................................................1, 2, 6

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)..............................................................3

*Elec. Privacy Info. Ctr. v. DHS*, 653 F.3d 1 (D.C. Cir. 2011) .......................................4

*El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272 (D.C. Cir. 2011) .......................2

*El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265 (D.C. Cir. 2005) ...............1

*Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005)...........................................................4

*Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009) .........................................................1

*Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004) ......................................................6

*Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125 (D.C. Cir. 2017).........................................2

*Moulton v. OPM*, MSPB Docket No. DE-0841-18-0053-I-1 (2018) ...............................5

*NTEU v. Chertoff*, 385 F. Supp. 2d 1 (D.D.C. 2005).....................................................4

*NTEU v. Devine*, 577 F. Supp. 738 (D.D.C. 1983)........................................................4

*NTEU v. Whipple*, 636 F. Supp. 2d 63 (D.D.C. 2009)..................................................3, 4

*Zirbel v. OPM*, 87 M.S.P.R. 84 (2000) ............................................................................................5

**Statutes and Regulations**

5 U.S.C. § 551(2) ....................................................................................................................4
5 U.S.C. § 551(4) ....................................................................................................................5
5 U.S.C. § 553(b) ....................................................................................................................4
5 U.S.C. § 553(c) .................................................................................................................4, 5
5 U.S.C. § 704 .........................................................................................................................1
5 U.S.C. § 706(2)(D) ..............................................................................................................5
5 U.S.C. § 1204(a)(4) .............................................................................................................5
5 U.S.C. § 1204 (f)(2) ............................................................................................................5

Plaintiff Federal Law Enforcement Officers Association ("FLEOA") submits this surreply to address the effect of a recent D.C. Circuit decision holding that this Court lacked jurisdiction to decide whether three Executive Orders pertaining to federal labor relations were unconstitutional and inconsistent with the Federal Service Labor-Management Relations Statute ("FSLMRS"). *Am. Fed. of Gov't Employees* ("*AFGE*") *v. Trump*, No. 18-5289, 2019 BL 261655, at *4 (D.C. Cir. July 16, 2019). Defendants (collectively, "the Government") now argue that this decision requires dismissal of FLEOA's claims here. Defs.' Reply, ECF No. 18, at 2, 6–8, 12, 22. It does not.

I.   *AFGE* **does not speak to this Court's jurisdiction over APA claims.**

a.  **The claim preclusion analysis required under APA Section 704 is distinct from the preclusion analysis applicable to non-APA claims.**

The Administrative Procedure Act ("APA") supplies jurisdiction over "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An alternative remedy need not offer identical relief to that available under the APA in order to have preclusive effect, but it must be of "the same genre." *See Citizens for Responsibility & Ethics in Washington* ("*CREW*") *v. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)); *see also Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988) (finding the monetary remedies available in the Claims Court under the Tucker Act to be an inadequate substitute for the prospective equitable relief available in a district court).

The adequacy of an alternative remedy is a question of congressional intent. *See CREW*, 846 F.3d at 1244 ("[W]e look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review.") (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)). In ascertaining congressional intent regarding alternative

1

remedies, a court must weigh two competing elements: (1) the congressional judgment reflected in Section 704 "that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures,'" *id.* (quoting *Bowen*, 487 U.S. at 903); and (2) the "presum[ption] [that] the Congress intends that agency action be judicially reviewable." *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017) (citing *El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011)). Thus courts "must [] avoid lightly 'constru[ing] [section 704] to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action.'" *See CREW*, 846 F.3d at 1244 (quoting *Bowen*, 487 U.S. at 903).

The Government argues that *AFGE* governs the application of Section 704 to FLEOA's claims and compels a finding that the Civil Service Reform Act ("CSRA") displaces the APA and divests this Court of jurisdiction. *See* Defs.' Reply at 6 ("In *AFGE*, the D.C. Circuit provided that when 'Congress intended that a litigant proceed exclusively through a statutory scheme' that scheme should be deemed as providing 'meaningful review' for purposes of determining claim preclusion under 5 U.S.C. § 704 . . . ."). This is incorrect. *AFGE* is not controlling as to the preclusive scope of Section 704 because the court didn't address Section 704, and for good reason—the *AFGE* plaintiffs did not raise any claims under the APA. *See AFGE*, 2019 BL 261655, at \*3.[1]

---

[1] *AFGE* is also immediately distinguishable for a second reason, which is that the alternative remedial scheme at issue there, the FSLMRS, administered by the Federal Labor Relations Authority, is distinct from the Federal Employee Retirement System at issue here, which unlike FSLMRS, is administered by the Office of Personnel Management and provides for individual recourse to the Merit Systems Protection Board ("MSPB"). *Cf.* Defs.' Reply at 9

Nor is *AFGE*'s general preclusion analysis persuasive as to the distinct analysis required under Section 704. This is because the *AFGE* court needed only to determine whether Congress intended the FSLMRS remedial scheme to be exclusive of judicial review outside of that scheme, a question the court was able to answer inferentially based on the comprehensiveness of the FSLMRS with respect to federal labor relations. *See id.* at *6–11.[2]

When presented with APA claims, on the other hand, a court must look not only for indications that Congress intended the primary statutory scheme at issue to be exclusive, but must also, to effectuate the presumption of APA reviewability, determine whether the types of relief available through that scheme are of the "same genre" as the types of relief available through the APA. *See supra* at 2. This "same genre" analysis recognizes that in the context of an APA claim, Congress has spoken not once, but twice—once with respect to the primary statute at issue and once with respect to the default procedural rules under which an agency must operate. As a result, the court's task under APA Section 704 is to give due respect to both pronouncements. *See supra* at 2; *see generally Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670–73 (1986) (canvassing legislative history of the APA to support "the strong presumption that Congress intends judicial review of administrative action.").

The Government is thus incorrect to assert that *NTEU v. Whipple*, 636 F. Supp. 2d 63 (D.D.C. 2009), and the other authorities on which FLEOA relies in its Opposition brief are no

---

(claiming that certain precedents are distinguishable because they do not concern the MSPB review scheme under the CSRA).

[2] Similarly in *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), another case on which the Government primarily relies, Defs.' Reply at 2–3, 7–8, plaintiffs solely raised constitutional claims and the court focused exclusively on whether Congress intended the CSRA to be exclusive with respect to such claims. *See Elgin*, 567 U.S. at 5.

longer good law following *AFGE. See* Defs.' Reply at 7–8.[3] Rather, *Whipple*—along with *NTEU*

*v. Chertoff*, 385 F. Supp. 2d 1 (D.D.C. 2005), and *NTEU v. Devine*, 577 F. Supp. 738 (D.D.C.

1983), *see* FLEOA's Opp., ECF No. 14, at 5—are simply part of a distinct line of APA

preclusion cases, on the whole analytically consistent with the D.C. Circuit's more recent APA

cases including *CREW, Garcia,* and *El Rio Santa Cruz.*[4]

      **b.** **The administrative remedies available to certain affected employees through the MSPB are not of the "same genre" as those available under the APA.**

The APA requires agencies issuing legislative rules—that is, those that alter the

substantive rights of regulated entities, *see Elec. Privacy Info. Ctr. v. DHS*, 653 F.3d 1, 5 (D.C.

Cir. 2011)—to provide public notice of proposed rulemaking in the Federal Register and to

accept comments thereon from all "interested persons," including organizations such as FLEOA.

*See* 5 U.S.C. §§ 551(2); 553(b)–(c). The purpose of these procedures is to facilitate "public

participation in agency decision-making" and "to ensure the agency has all pertinent information

before it when making a decision." *See Elec. Privacy Info. Ctr*, 653 F.3d at 6 (citing and quoting

---

[3] The Government also inaccurately suggests that *Whipple* predates the D.C. Circuit's decision in *Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005), even though *Fornaro* was decided in 2005 and *Whipple* was not decided until 2009. *See* Defs.' Reply at 8.

[4] *Fornaro*, on which the Government heavily relies, is analytically consistent with the D.C. Circuit's other APA cases. Specifically, the court in that case compared the relief plaintiffs were seeking in court—essentially a recalculation of their benefits—against the relief potentially available to them through the MSPB and concluded that these remedies had a "far closer connection" than the relief sought in the APA claims allowed in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991). *See Fornaro*, 416 F.3d at 68. Here, FLEOA's claims do not have a close connection to the relief available in the MSPB process, since the MSPB does not provide a forum for the vindication of the procedural rights set forth in the APA, nor would the MSPB even entertain claims from FLEOA or those of its members who have not yet been affected by OPM's actions (*e.g.*, active duty members who will be affected upon their retirement). *See* FLEOA's Opp. at 8–10.

*Chamber of Commerce of U.S. v. DOL*, 174 F.3d 206, 211 (D.C. Cir. 1999), and *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1044 (1987)). With respect to interested persons, the value of these procedures is that it allows them to put forward relevant data and arguments while the agency's mind remains open on the issue at hand given that "an agency is not likely to be receptive to suggested changes once the agency puts its credibility on the line in the form of final rules." *See Advocates for Highway & Auto Safety v. FHA*, 28 F.3d 1288, 1292 (D.C. Cir. 1994).

To ensure compliance with these important procedural requirements, the APA empowers courts, in addition to reviewing the substance of agency action, to set aside agency actions undertaken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The CSRA, in contrast, provides no comparable procedural remedies with respect to OPM's compliance with rulemaking procedures. *See* FLEOA's Opp. at 9 (citing 5 U.S.C. § 1204(a)(4), (f)(2); *Zirbel v. OPM*, 87 M.S.P.R. 84, 86 (2000); April 16, 2018 Initial Decision of Administrative Judge James A. Kasic at 13–14, *Moulton v. OPM*, MSPB Docket No. DE-0841-18-0053-I-1).

This disconnect between the CSRA's remedial scheme and the procedural rights and remedies available under the APA is best illustrated by Count II of FLEOA's Complaint, which alleges that OPM's substantive change in policy constituted a rule within the meaning of 5 U.S.C. § 551(4) promulgated without the notice-and-comment procedures required by Section 553. *See* Compl., ECF No. 1, ¶¶ 33–39. Taking these allegations as true, both FLEOA and the members on whose behalf it brings suit were denied the "opportunity to participate in the rule making through submission of written data, views, or arguments" while OPM's mind remained open prior to promulgation of what is effectively a final rule. *See* 5 U.S.C. § 553(c); *see also* FLEOA's Opp. at 4.

This is a harm, moreover, that cannot be remedied through the MSPB, which lacks statutory authority to enforce OPM's compliance with Section 553, and which has no jurisdiction over claims by interested organizational entities such as FLEOA. *See supra* at 4–5; *see also* FLEOA's Opp. at 10. Put differently, FLEOA's APA rulemaking claim is simply not an "employment matter" and thus falls outside of the CSRA's preclusive scope. *Cf. Filebark v. DOT*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (citing *Graham v. Ashcroft*, 358 F.3d 931, 934 (D.C. Cir. 2004), for the proposition that litigation of "employment matters" is precluded by the CSRA). In short, jurisdiction is compelled here to avoid "defeat[ing] the [APA's] central purpose of providing a broad spectrum of judicial review of agency action." *See CREW*, 846 F.3d at 1244.

In sum, *AFGE* does not govern this Court's preclusion analysis under APA Section 704 and, under the appropriate APA-specific preclusion analysis established by D.C. Circuit precedent, this Court has jurisdiction over FLEOA's APA claims because they seek relief entirely distinct from that available through the MSPB. Further, *AFGE* does not call into question FLEOA's associational standing to bring these claims, as explained below.

## II.   *AFGE* has no bearing on whether FLEOA has associational standing.

The Government argues that FLEOA's argument for associational standing "has been specifically abrogated by the D.C. Circuit's decision in *AFGE*." Defs.' Reply at 22. This can't be true, however, since the organizational plaintiffs' standing in that case was not challenged below and was thus never at issue on appeal. *AFGE*, 2019 BL 261655, at *4. Simply put, *AFGE* is solely about the types of claims that this Court can hear, not who can pursue them.

## CONCLUSION

For the reasons set forth above, *AFGE* does not foreclose this Court's jurisdiction over

FLEOA's APA claims or FLEOA's standing to pursue them. Accordingly, Defendants' Motion

to Dismiss should be denied.


Dated: August 29, 2019                    Respectfully submitted,

                                          /s/ Ryan E. Griffin
                                          Ryan E. Griffin, D.C. Bar Number 1007078
                                          Daniel M. Rosenthal, D.C. Bar Number 1010473
                                          James & Hoffman, P.C.
                                          1130 Connecticut Avenue, NW, Suite 950
                                          Washington, DC 20036
                                          (202) 496-0500
                                          (202) 496-0555 (fax)
                                          regriffin@jamhoff.com
                                          dmrosenthal@jamhoff.com

                                          Attorneys for Plaintiff Federal Law Enforcement
                                          Officers Association