# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION,<br><br>      Plaintiff,<br><br>v.<br><br>DALE CABANISS, et al.<br><br>      Defendants. | Civil Action No. 19-735 (CKK) |

## PLAINTIFF'S REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Respectfully submitted,

Ryan E. Griffin, D.C. Bar Number 1007078
Daniel M. Rosenthal, D.C. Bar Number 1010473
James & Hoffman, P.C.
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
(202) 496-0500
(202) 496-0555 (fax)
regriffin@jamhoff.com
dmrosenthal@jamhoff.com

Attorneys for Plaintiff Federal Law Enforcement Officers Association

Dated: January 24, 2020

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.  OPM's interpretation of Section 8421(c) is a legislative rule because it directly and immediately altered the rights of affected retirees..................................................2

II. Even if OPM's rule were merely interpretive, the Court would have jurisdiction under the APA to review it for statutory compliance ...............................................................5

III. The Court should not stay this proceeding pending the outcome of individual MSPB appeals because those appeals will resolve only individual cases.........................................6

CONCLUSION......................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Am. Fed. Gov't Employees v. Trump*, 929 F.3d 748 (D.C. Cir. 2019)............................................9

*Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627 (D.C. Cir. 2019) ...............................................6

*CropLife Am. v. EPA*, 329 F.3d 876 (D.C. Cir. 2003) ....................................................................4

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408 (D.C. Cir. 2011) ........................6

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)................................................................................7

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
     920 F.3d 1 (D.C. Cir. 2019)..................................................................................................3

*Moulton v. OPM*, MSPB Docket No. DE-0841-18-0053-I-1, Apr. 16, 2018
     Initial Decision of Administrative Judge James A. Kasic ....................................................7

*Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014) ...................................................2

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015).......................................................................6

*Pharm. Research & Mfrs. of Am. v. HHS*, 138 F. Supp. 3d 31 (D.D.C. 2015)...............................6

*United States v. Fausto*, 484 U.S. 439 (1998) ...............................................................................9

*U.S. Capitol Police v. Office of Compliance*, 916 F.3d 1023 (Fed. Cir. 2019) ..............................8

*Zhang v. U.S. Citizenship & Immigration Servs.*,
     344 F. Supp. 3d 32 (D.D.C. 2018) ....................................................................................2, 3

**Statutes and Regulations**

5 U.S.C. § 706(2)(A)........................................................................................................................6

5 U.S.C. § 1103(a)(5) .......................................................................................................................8

5 U.S.C. § 8421(c) ................................................................................................................. *passim*

5 C.F.R. § 838.101(a).......................................................................................................................4

5 C.F.R. § 838.103 .......................................................................................................................3, 4

5 C.F.R. § 838.306 ...........................................................................................................................3

**Other Authorities**

*'Buckets of Back Pay' Could Go to Feds Once Appeal Board Is Back*, Daily Labor Report
 (Bloomberg), Sept. 25, 2019, *available at* https://news.bloomberglaw.com/daily-labor-
 report/buckets-of-back-pay-could-go-to-feds-once-appeal-board-is-back ...................... 7-8

U.S. Office of Personnel Management, Office of the Inspector General, Management Advisory
 Report Number L-2018-1, "Review of the U.S. Office of Personnel Management's Non-
 Public Decision to Prospectively and Retroactively Re-Apportion Annuity Supplements"
 (Feb. 5, 2018), *available at* https://www.opm.gov/our-inspector
 general/publications/management-advisory-reports/ ..........................................................4

**INTRODUCTION**

The primary dispute in the parties' opening Supplemental Briefs, ECF Nos. 28–29, is whether Defendant U.S. Office of Personnel Management ("OPM") was required to undertake notice-and-comment rulemaking under the Administrative Procedure Act ("APA") when it adopted a new interpretation of 5 U.S.C. § 8421(c). Yet Defendants largely skirt the issue most critical to answering this question: the substantive legal effect on regulated entities. Here, it is undisputable that OPM slashed affected retirees' benefits and imposed new debts on them as a direct and immediate consequence of its interpretation. Thus OPM was required to engage in notice-and-comment rulemaking. To remedy its undisputed failure to do so, this Court should take jurisdiction and vacate OPM's action.

Despite the parties' conflicting positions on this primary issue, they both argue in the alternative that OPM's action constitutes an interpretive rule under the APA. They disagree, however, as to the jurisdictional implications of this conclusion. Defendants seem to suggest that a finding that OPM's rule was interpretive would somehow defeat jurisdiction here, but ultimately concede that this conclusion would bear only on whether OPM was required to satisfy the notice-and-comment requirements. Further, Defendants do not challenge that, as demonstrated in Plaintiff Federal Law Enforcement Officers Association's ("FLEOA") opening supplemental brief, the question of whether a final interpretive rule is arbitrary, capricious, or contrary to law falls squarely within this Court's APA jurisdiction.

Finally, Defendants argue that if the Court has jurisdiction, it should stay proceedings because individual challenges to OPM's actions are pending before the Merit Systems Protection Board ("MSPB"). But if the Court has jurisdiction over these claims, it should decide them.

There is little risk of conflicting decisions, and even if there were, courts routinely differ on the same issues of law.

## ARGUMENT

### I. OPM's interpretation of Section 8421(c) is a legislative rule because it directly and immediately altered the rights of affected retirees.

FLEOA explained in its opening brief that the most important attribute of a legislative rule is its "actual legal effect . . . on regulated entities" and that OPM's interpretation of Section 8421(c) had such effect because, among other reasons, it resulted in immediate benefits cuts for affected retirees. *See* FLEOA Supp. Br., ECF No. 28, at 7 (quoting *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014)), 9–10.

Defendants largely seek to avoid this issue. Instead, their arguments for why OPM's action was non-legislative (*i.e.*, either a non-rule or at most an interpretive rule under the APA) coalesce around three alternative themes, none of which is availing.

First, Defendants argue that OPM's interpretation was not legislative because it merely constituted internal guidance from Agency management to operational staff of which "[t]here was no need to inform the public because OPM management's reading of the statute would apply solely to OPM annuitants and former or separated spouses entitled to a share of their annuity." *See* Defs.' Supp. Br. at 15–16. But neither the "internal" label nor the fact that OPM's interpretation was issued to guide operational staff with respect to a statutory requirement are conclusive; indeed, "an agency may not label a substantive change to a rule an interpretation simply to avoid the notice and comment requirements." *See Zhang v. U.S. Citizenship & Immigration Servs.*, 344 F. Supp. 3d 32, 58 (D.D.C. 2018). Instead, the relevant question is one of effect. *See Nat'l Mining*, 758 F.3d at 252; *Zhang*, 344 F. Supp. 3d at 58.

Relatedly, it is irrelevant that OPM's action affected retirees and their ex-spouses as opposed to "the public" at large. Instead, as the D.C. Circuit expressly noted in *National Mining*, the "effects" test turns on the "actual legal effect . . . *on regulated entities*." *See* 758 F.3d at 252 (emphasis added). For instance, a rule regulating an immigration visa program is no less a rule because most American do not (and could not) use that program. *Cf. Zhang*, 344 F. Supp. 3d at 58. And here, there can be no doubt that regulated entities—*i.e.*, retirees (current and future) with divorce decrees worded in such a way so as to be implicated by OPM's action—were actually and adversely affected by the benefits cuts that resulted. *See* FLEOA Supp. Br. at 9–10.

Second, Defendants argue that OPM's action was non-legislative because "[i]n issuing [its] internal guidance, OPM did not adopt a new position inconsistent with existing regulations" and "did not otherwise effect a substantive change in existing law or policy." *See* Defs.' Supp. Br. at 15. In support of this argument, Defendants assert that "OPM had not previously attempted to regulate directly as to the meaning of 5 U.S.C. § 8421(c) and thus had no prior regulatory interpretation to change" and that OPM's interpretation "was also compelled by an *appropriate reading* of" 5 C.F.R. §§ 838.103 and 838.306. *See id.* at 16 (emphasis added). All of these contentions are misguided.

As to Defendants' claim of not changing law, policy, or positions, this is simply not true. Instead, as explained above and in FLEOA's opening supplemental brief, OPM's interpretation had the direct and immediate effects of both depriving affected retirees of benefits to which they were previously entitled and saddling them with debts that they had not previously held.

As to the absence of a prior formal interpretation of Section 8421(c), that is of no moment because a change in longstanding agency practice may affect regulated entities' rights just as surely as a revision to a formally promulgated rule. *See Guedes v. Bureau of Alcohol,*

3

*Tobacco, Firearms, & Explosives*, 920 F.3d 1, 18 (D.C. Cir. 2019) (rejecting agency's attempt to classify its action as a mere clarification of existing law where it upended longstanding practice treating the conduct at issue as legal); *CropLife Am. v. EPA*, 329 F.3d 876, 881 (D.C. Cir. 2003) (holding that agency's press release conclusively altering a longstanding practice constituted a legislative rule).

Finally, OPM cannot resist judicial review by arguing that its action was compelled by existing regulations. It is undisputed that the Agency completely reversed course in 2016 regarding its stance towards allocation of the Annuity Supplement. Whatever "appropriate reading" of the regulations the Agency believes justifies its 2016 interpretation is necessarily different than the reading on which its longstanding pre-2016 practice was premised, and that is precisely the problem.[1]

Third, Defendants argue that OPM's action was non-legislative because "it merely announced its construction of an existing statute" that "is clear on its face" and contains "no express direction to fill in a[n] [interpretive] gap." *See* Defs.' Supp. Br. at 15–16. But this argument places the cart before the horse by confusing the statutory interpretation questions at the heart of one of FLEOA's substantive claim—that the Agency acted arbitrarily, capriciously, or contrary to law, *see* Compl. Count I, ECF No. 1, ¶¶ 27–32—with the jurisdictional inquiry

---

[1] Further, the regulations on which OPM relies hardly justify its reinterpretation of Section 8421(c). The definition of "employee annuity" set forth in 5 C.F.R. § 838.103 is vague at best and does not purport to interpret Section 8421(c) or otherwise shed any light on whether the Annuity Supplement can be divided. Moreover, OPM's regulations limit it to performing only a ministerial function rather than attempting to interpret a court order that does not unambiguously divide the Annuity Supplement. *See* 5 C.F.R. § 838.101(a). As noted by OPM's Inspector General, interpreting general references to the employee annuity contained in a divorce decree as specifically dividing the Annuity Supplement runs contrary to this directive. *See* U.S. Office of Personnel Management, Office of the Inspector General, Management Advisory Report Number L-2018-1, "Review of the U.S. Office of Personnel Management's Non-Public Decision to Prospectively and Retroactively Re-Apportion Annuity Supplements" (Feb. 5, 2018), ECF No. 29-5, at 9–10 ("OIG Report"), available at https://www.opm.gov/our-inspector-general/publications/management-advisory-reports/.

presented by Defendants' Rule 12(b)(1) motion. As explained above, however, the logically antecedent jurisdictional inquiry does not require the Court to determine the meaning of the statutory provisions at issue at this early stage of the litigation, without the benefit of dedicated briefing on the question of statutory meaning. Instead, it merely requires the Court to examine the substantive legal effects of the Agency's action.

In short, OPM's interpretation of Section 8421(c) constitutes a legislative rule because it upended the Agency's longstanding practice and directly and immediately affected the legal rights and obligations of divorced retirees and their ex-spouses. And because OPM failed to promulgate this policy through notice-and-comment rulemaking, the Court not only has jurisdiction over FLEOA's challenge, but should find in its favor on Count II and vacate the Agency's action as a result.

## II. Even if OPM's rule were merely interpretive, the Court would have jurisdiction under the APA to review it for statutory compliance.

Even if OPM's rule were merely interpretive, the Court would nonetheless have jurisdiction to consider whether the rule was inconsistent with Section 8421(c), as FLEOA alleges in Count I of its Complaint.

The parties appear to agree that if OPM's action was not a legislative rule, as FLEOA contends, or a non-action for APA purposes, as Defendants argue, then it was an interpretive rule. *See* FLEOA Supp. Br. at 15–17; Defs.' Supp. Br. at 19–22. Both parties further agree that if OPM's action is an interpretive rule, then it did not need to engage in notice-and-comment rulemaking. *See* Defs.' Supp. Br. at 19–22. This conclusion is irrelevant to this Court's jurisdiction over Count I of FLEOA's Complaint, however, because as FLEOA explained in its previous brief, judicial review requires only that the interpretive rule be final. *See* FLEOA Supp. Br. at 15–17. And critically, Defendants do not raise any dispute as to finality.

5

The issue raised by Count I is not whether OPM was required to engage in notice-and-comment rulemaking, but rather whether the rule it ultimately came up with—however promulgated—is consistent with the relevant statutory provisions or is instead "arbitrary, capricious, or contrary to law." *See* Compl., ECF No. 1, ¶¶ 27–32; 5 U.S.C. § 706(2)(A). And there can be no question that issue falls squarely within this Court's bailiwick. *See Pharm. Research & Mfrs. of Am. v. HHS*, 138 F. Supp. 3d 31, 47 (D.D.C. 2015) ("'[A]n agency may not avoid judicial review merely by choosing' . . . a purportedly non-binding Interpretive Rule[] 'to express its definitive position on a general question of statutory interpretation.'" (quoting *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011))); *see also Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 635 (D.C. Cir. 2019) (reading *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97(2015) as confirmation that an affected party can seek judicial review of an interpretive rule pursuant to the APA.). Indeed, Defendants themselves appear to concede as much. *See* Defs.' Supp. Br. at 22 (discussing the *Mortgage Bankers* decision and noting that with respect to an interpretive rule, "a reviewing court will have greater latitude to interpret the statute itself").

**III. The Court should not stay this proceeding pending the outcome of individual MSPB appeals because those appeals will resolve only individual cases.**

Defendants' final argument is that even if the Court has jurisdiction, it should stay the litigation pending the outcome of various individual retirees' pending appeals to the MSPB. Defs.' Supp. Br. at 24; *see also id.* at 4–5 (listing pending MSPB cases). Their principal argument concerns the supposed risk of conflicting opinions between this Court and the MSPB or the Federal Circuit. *See id.* at 24–25. Defendants' argument misses the mark in several respects.

6

Most critically, there is no potential for legally conflicting results with respect to FLEOA's claim in Count II that OPM failed to engage in notice-and-comment rulemaking because the MSPB does not have authority to decide this issue. *See Moulton v. OPM*, MSPB Docket No. DE-0841-18-0053-I-1, Apr. 16, 2018 Initial Decision of Administrative Judge James A. Kasic at 13–14 (finding that the Board lacks jurisdiction to decide whether OPM was required to engage in notice-and-comment rulemaking regarding its 2016 interpretation of Section 8421(c)).[2]

Defendants' suggestion of a practical conflict arising from a decision from this Court requiring notice-and-comment rulemaking and a decision from the Federal Circuit finding that Section 8421(c) was clear on its face, *see* Defs.' Supp. Br. at 24–25, is likewise a straw man given that even such a hypothetical conclusion by the Federal Circuit would not relieve OPM of its obligation under the APA to engage in notice-and-comment rulemaking before upending decades of consistent agency practice. *See supra* at 2–5.

Finally, even if this Court were to find OPM's rule to be interpretive and review it for statutory compliance in that posture pursuant to Count I of FLEOA's Complaint, the likelihood of an actual conflict any time in the near future is remote given the absence of a quorum at the MSPB for three years and counting and the voluminous backlog of cases—likely close to 3,000 and growing—that the Board will face if and when a quorum is eventually restored. *See* FLEOA Opp. Br., ECF No. 14, at 10 n.4; *see also 'Buckets of Back Pay' Could Go to Feds Once Appeal*

---

[2] Defendants suggest that the Federal Circuit could consider such an argument on appeal from the MSPB even though the Agency lacked the authority to consider it. *See* Defs.' Supp. Br. at 27 (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 14 (2012)). But even if this is so, Defendants unsurprisingly fail to offer any authority for the novel proposition that this Court should defer to an appellate decision in a hypothetical future appeal on an issue that the "expert" agency lacked the authority to decide. And at any rate, this Court has already explained that *Elgin* is inapposite in the APA context. *See* Mem. Op., ECF No. 25, at 10–11.

*Board Is Back*, Daily Labor Report (Bloomberg), Sept. 25, 2019,

https://news.bloomberglaw.com/daily-labor-report/buckets-of-back-pay-could-go-to-feds-once-appeal-board-is-back (indicating that the MSPB's backlog of cases was roughly 2,400 at the end of August 2019 with an average of 57 cases being added each month).[3]

Defendants offer three other rationales to justify a stay, all of which are likewise unpersuasive. First, Defendants urge the Court to wait for decisions from the MSPB and the Federal Circuit on the theory that these entities "have developed considerable expertise concerning the administration of Federal employees' retirement programs . . . ." *See* Defs.' Supp. Br. at 26. The question at the heart of FLEOA's claim on the merits is not a question of program administration, however, but rather one of pure statutory interpretation—whether Section 8421(c) permits OPM to apportion retirees' Annuity Supplements to former spouses absent an express court order. The MSPB possesses no special expertise in this regard; indeed, the Federal Circuit's review of the Board's legal conclusions is *de novo*. *See, e.g.*, *U.S. Capitol Police v. Office of Compliance*, 916 F.3d 1023, 1026 (Fed. Cir. 2019). Nor is the Federal Circuit any more qualified than this court (or the D.C. Circuit, on appeal) to determine the meaning of terms in the U.S. Code. Instead, the only administrative agency expertise potentially qualifying for deference on this issue is that of the Director of OPM. *See* 5 U.S.C. § 1103(a)(5) (vesting the Director with the authority to administer the civil service rules and regulations). And any such deference to that

---

[3] Defendants also appear to suggest that the Court should give more weight to a potential conflict with the MSPB and the Federal Circuit because actions in those venues might ultimately lead to an authoritative pronouncement from the Supreme Court as to the meaning of Section 8421(c). *See* Defs.' Supp. Br. at 25. This is an odd argument, however, because the same path to Supreme Court review exists here. More generally, this points to a broader problem with Defendants' position, which is that inter-circuit splits are a fact of life, including for the federal government, and the solution to that problem is not to ask every court but one to sit out.

8

expertise, to the extent warranted, can be afforded to the Director here just as well as before the MSPB or the Federal Circuit.

Second, Defendants suggest that the instant jurisdictional dispute warrants deference to the MSPB and the Federal Circuit on the theory that "there appears to be no dispute . . . as to whether the Board and Federal Circuit have jurisdiction over the individual appeals currently pending arising out of OPM's administration of 5 U.S.C. § 8421(c) . . . ." *See* Defs.' Supp. Br. at 26. But the lack of controversy regarding the MSPB's jurisdiction stems from the fact that it indisputably lacks jurisdiction to decide one of the core issues before this Court: whether OPM was required to engage in notice-and-comment rulemaking. *See supra* at 6–7.

Third, Defendants urge the Court to defer to the MSPB by attempting to resurrect the same "claim channeling" arguments on which they based their arguments for exclusive MSPB jurisdiction in their original motion to dismiss. *See* Defs.' Supp. Br. at 26–28 (citing *United States v. Fausto*, 484 U.S. 439, 445 (1998), and *Am. Fed. Gov't Employees v. Trump*, 929 F.3d 748 (D.C. Cir. 2019)). But the Court has already correctly rejected the applicability of this argument in the APA context because it ignores both the text and intent of that statute and the courts' expertise in applying it. *See* Mem. Op. at 11–12. It should thus decline Defendants' invitation to revisit that issue now.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied, and the Court should further rule in FLEOA's favor on the merits of Count II and vacate OPM's 2016 interpretation of Section 8421(c) due to the Agency's failure to undertake notice-and-comment rulemaking as required by the APA. Alternatively, should the Court conclude that OPM's action

9

constitutes an interpretive rule, it should deny Defendants' Motion and allow the parties to proceed to litigation on the merits of Counts I and III of FLEOA's Complaint.

                    Respectfully submitted,

                    /s/ Ryan E. Griffin
                    Ryan E. Griffin, D.C. Bar Number 1007078
                    Daniel M. Rosenthal, D.C. Bar Number 1010473
                    James & Hoffman, P.C.
                    1130 Connecticut Avenue, NW, Suite 950
                    Washington, DC 20036
                    (202) 496-0500
                    (202) 496-0555 (fax)
                    regriffin@jamhoff.com
                    dmrosenthal@jamhoff.com

                    Attorneys for Plaintiff Federal Law Enforcement Officers Association

Dated: January 24, 2020