**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION, Plaintiff v. MICHAEL RIGAS[1], Acting Director, United States Office of Personnel Management, *et al.*, Defendants | Civil Action No. 19-735 (CKK) |

**MEMORANDUM OPINION**
(August 20, 2020)

This case concerns the 2016 decision of Defendants, the Director of the United States Office of Personnel Management and the United State Office of Personnel Management ("OPM"), to implement a policy which resulted in the reduction of supplemental annuity payments for many retired law enforcement officers who are divorced. Plaintiff, the Federal Law Enforcement Officers Association ("FLEOA"), represents 27,000 current and retired federal law enforcement officers and challenges the 2016 supplemental annuity payment policy ("Policy") under the Administrative Procedure Act ("APA"). FLEOA asserts a total of three claims against Defendants under the APA. In Count 1, Plaintiff contends that the Policy is arbitrary and capricious; in Count 2, Plaintiff claims that Defendants failed to engage in the proper rulemaking procedures under the APA; and, in Count 3, Plaintiff alleges that Defendants acted in excess of congressional authority by making the Policy retroactive.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Michael Rigas is substituted in his official capacity as the Acting Director of the United States Office of Personnel Management.

Presently before the Court is Defendants' Motion to Dismiss and the associated supplemental briefings. Upon consideration of the pleadings[2], the relevant legal authorities, and the record as a whole, the Court shall DENY Defendants' Motion to Dismiss as it relates to Count One and Count Three of Plaintiff's Complaint. The Court has jurisdiction under the APA to review the Policy for being arbitrary and capricious or for being in excess of delegated authority. However, the Court shall GRANT Defendants' Motion as it relates to Count 2 as Defendants were not required to engage in notice and comment rulemaking procedures.

## I.   BACKGROUND

### A. Factual Background

Pursuant to the Federal Employees Retirement System ("FERS"), federal government civilian employees may receive retirement benefits, such as annuities and Social Security. Compl., ECF No. 1, ¶ 6. Federal civilian employees who reach retirement age with the required number of service years are entitled to an annuity. *Id.* at ¶ 7. Certain employees, such as law enforcement officers, are eligible to retire at a younger age with fewer service years. *Id.* at ¶ 8.

---

[2] The Court's consideration has focused on the following documents:
- Defs.' Mot. to Dismiss ("Def.'s Mot."), ECF No. 12;
- Pl.'s Mem. of Points and Authorities in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 14;
- Defs.' Mem. in Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Def.'s Reply"), ECF No. 18;
- Pl.'s Surreply in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Surreply"), ECF No. 21;
- Defs.' Mem. in Res. to Pl.'s Surreply ("Defs.' Res. to Pl.'s Surreply"), ECF No. 23;
- Pl.'s Supp. Brief in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Supp."), ECF No. 28;
- Defs.' Supp. Brief in Support of Mot. to Dismiss ("Defs.' Supp."), ECF No. 29;
- Pl.'s Reply to Defs.' Supp. Brief in Support of Defs.' Mot. to Dismiss ("Pl.'s Reply to Defs.' Supp."), ECF No. 30; and
- Defs.' Cross-Reply to Pl.'s Supp. Brief ("Defs.' Cross-Reply"), ECF No. 31.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

These employees are entitled to a supplemental annuity payment which substitutes for Social Security until the retiree reaches the minimum age to qualify for Social Security. *Id.*

According to Plaintiff, supplemental annuity payments are to "be treated in the same way" as basic annuity payments. *Id.* at ¶ 12 (quoting 5 U.S.C. § 8421(c)). Basic annuity payments can be paid to a person other than the retiree "if and to the extent provided for in the terms of [] any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation." *Id.* at ¶ 9 (quoting 5 U.S.C. § 8467(a)(1)). In interpreting court orders, Defendants "perform[] purely ministerial actions," "must honor the clear instructions of the court," and "will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws." *Id.* at ¶ 10 (quoting 5 C.F.R. § 838.101(a)(2)).

Plaintiff claims that from the implementation of FERS until 2016, Defendants did not include supplemental annuity payments in the calculation of basic annuity payments to a retiree's former spouse pursuant to a court order unless that court order expressly called for the division of the supplemental annuity payment. *Id.* at ¶ 13. However, in July 2016, Defendants began apportioning supplemental annuity payments to former spouses of retirees where there was a court-ordered division of basic annuity benefits, even if the court order did not expressly call for the division of supplemental annuity payments. *Id.* at ¶ 15. Plaintiff contends that this change was prompted by Defendants' determination that 5 U.S.C. § 8421(c) required that supplemental annuity payments be apportioned to a former spouse whenever a court order required the apportionment of basic annuity payments. *Id.* at ¶ 16; 5 U.S.C. § 8421(c) (requiring that supplemental annuity payments "be treated in the same way" as basic annuity payments).

Also in July 2016, Plaintiff contends that Defendants calculated the supplemental annuity payment amounts that would have been due to the affected retirees' former spouses had the Policy been in effect from the date of their retirement or the date of the court order dividing basic annuity benefits. *Id.* at ¶ 17. Defendants notified the affected retirees of these amounts and began deducting the amounts owed in monthly installments from the annuity payments. *Id.* at ¶¶ 18-19.

Based on the Policy, Plaintiff brings three APA claims. In Count 1, Plaintiff alleges that the Policy is arbitrary and capricious because federal employee retirement benefits can be paid to another person only if expressly provided and the new Policy pays supplemental annuity payments to former spouses of retirees even if there is no court order expressly providing for the apportionment of supplemental annuity payments. *Id.* at ¶¶ 27-32. In Count 2, Plaintiff contends that the Policy constitutes agency action taken without observance of procedures required under the APA. *Id.* at ¶¶ 33-39. Specifically, Plaintiff alleges that Defendants' "reinterpretation" of FERS is a legislative rule for which Defendants failed to engage in proper rulemaking such as notice-and-comment procedures. *Id.* In Count 3, Plaintiff contends that Defendants acted in excess of congressional authority by improperly engaging in retroactive rulemaking. *Id.* at ¶¶ 40-44.

### B. Procedural Background

On June 18, 2019, Defendants filed a [12] Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. Defendants present two jurisdictional grounds for dismissing Plaintiff's Complaint. First, Defendants contend that review of Plaintiff's APA claims is precluded by the Civil Service Reform Act ("CSRA"). Second, Defendants contend that Plaintiff lacks standing to bring its claims.

Ordinarily, an APA claim is properly dismissed where Congress has provided a separate statutory scheme with remedies for a plaintiff's claims. *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005). The CSRA "cover[s] the field of federal employee claims." *Filebark v. U.S. Dep't of Transportation*, 555 F.3d 1009, 1014 (D.C. Cir. 2009). Pursuant to the CSRA, actions affecting federal employees are first reviewed by the OPM. 5 U.S.C. § 8347(a)-(c). Next, the United States Merit Systems Protection Board ("MSPB") reviews the "administrative action or order affecting the rights or interests of" the federal employee. 5 U.S.C. § 8461(d)(1). Following review by the MSPB, judicial review is exclusive with the Federal Circuit. 5 U.S.C. § 7703(b)(1). Because the CSRA provides a comprehensive remedial scheme for disputes as to retirement benefits, Defendants argue that the CSRA precludes review of Plaintiff's APA claims.

However, there is an exception to the CSRA's preclusion of APA claims whereby a district court can conduct pre-enforcement review of OPM rulemaking. In prior briefings, both parties recognized this exception. Defs.' Mot., ECF No. 12, 10-11; Pl.'s Opp'n, ECF No. 14, 6. However, the parties' prior briefings failed to fully or adequately brief the issue as to whether or not Defendants' Policy constitutes a "rule" which could be subject to pre-enforcement rulemaking review under the APA.

In a [25] Memorandum Opinion dated November 4, 2019, the Court denied without prejudice Defendants' motion pending further briefing on this issue. Specifically, the Court requested additional briefing as to the nature of the Policy and how the Court should decide whether or not the Policy is subject to pre-enforcement rulemaking review under the APA. Plaintiff and Defendants subsequently filed supplemental briefing on this issue. Briefing on the Defendants' Motion to Dismiss is now complete.

## II.     LEGAL STANDARD

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. A court must dismiss a case when it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). In doing so, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

"At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

## III.     DISCUSSION

The Court concludes that Defendants' Policy constitutes a non-legislative, interpretive rule. Because Defendants' Policy is a non-legislative rule, Defendants were no required to go through notice and comment rulemaking. However, because the action still constitutes an interpretive rule, review under the APA is not fully precluded by the CSRA.

### A. APA Review and CSRA Preclusion

An administrative action is reviewable under the APA only if "there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA "does not provide additional judicial remedies in

situations where Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (internal quotation marks omitted); 5 U.S.C. § 701(a)(1) (explaining that the APA does not apply "to the extent that [other] statutes preclude judicial review"). The APA does not provide jurisdiction for claims for which an adequate remedy is otherwise available or for claims seeking relief expressly limited by another statute. *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005). Where Congress has provided a separate statutory scheme with remedies for a plaintiff's claims, an APA claim is properly dismissed. *Id.* Here, Defendants contend that, because relief is available under the CSRA, APA review is unavailable.

However, as previously discussed, both parties recognize that there is an exception to the CSRA's preclusion of APA claims whereby a district court can conduct pre-enforcement review of OPM rulemaking. Defs.' Mot., ECF No. 12, 10-11; Pl.'s Opp'n, ECF No. 14, 6. "The APA has often been found to provide jurisdiction for a federal court to hear union challenges to agency regulations or policies of general application on the grounds that they were inconsistent with a statute or the Constitution." *NTEU v. Chertoff*, 385 F. Supp. 2d 1, 23 (D.D.C. 2005), *partially reversed on other grounds*, 452 F.3d 839 (D.C. Cir. 2006) (citing *NTEU v. Horner*, 854 F.2d 490 (D.C. Cir. 1988) (reviewing under the APA whether an OPM rule exempting positions from competitive service was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has repeatedly reaffirmed that pre-enforcement challenges to rulemaking under the APA are not barred by the CSRA. As the D.C. Circuit has explained, the argument that challenges to rulemaking under the APA are barred by the CSRA is "meritless." *Nat'l Treasury Employees*

*Union v. Devine*, 733 F.2d 114, 117 n.8 (D.C. Cir. 1984). "It is one thing to say that when a statute provides a detailed scheme of administrative protection for defined employment rights, less significant employment rights of the same sort are implicitly excluded and cannot form the basis for relief directly through the courts." *Id.* However, "[i]t is quite different to suggest...that a detailed scheme of administrative adjudication impliedly precludes preenforcement judicial review of rules." *Id.; see also Nat'l Treasury Employees Union v. Egger*, 783 F.2d 1114, 1117 (D.C. Cir. 1986) (explaining that the court did not "ignore or disparage" the ruling that the CSRA does "not apply to pre-enforcement judicial review of rules"). Similarly, other district courts within this Circuit have found that the CSRA does not preclude jurisdiction under the APA for pre-enforcement challenges to OPM's rulemaking. For example, in *NTEU v. Cornelius*, 617 F. Supp. 365 (D.D.C. 1985), the court noted that even though aggrieved federal employees are required to bring cases involving individual rights in accordance with the CSRA, the CSRA does not "insulate OPM from direct judicial review of challenges to *rulemaking* under the APA." 617 F. Supp. 365 at 367; *see also Nat'l Treasury Employees Union v. Whipple*, 636 F. Supp. 2d 63, 70 (D.D.C. 2009) (finding the plaintiff's APA claims that OPM's regulation was arbitrary, capricious, and contrary to law were not precluded by the CSRA); *see also Nat'l Treasury Employees Union v. Chertoff*, 385 F. Supp. 2d 1, 23 (D.D.C. 2005), *aff'd in part and rev'd and remanded on other grounds*, 452 F.3d 839 (D.C. Cir. 2006) (finding the plaintiff's APA challenge to OPM's regulations was not precluded by the CSRA); *OCONUS*, 144 F. Supp. 2d 1, 6-8 (D.D.C. 2000) (explaining the plaintiff's APA challenge to the OPM's draft regulation was proper and not precluded by the CSRA). The *NTEU* court concluded that it had jurisdiction over an APA challenge to the promulgation of a final rule governing appeal procedures of certain adverse employment actions. *Id.* Accordingly, in order to determine whether or not the CSRA

precludes APA review of Defendants' Policy, the Court must determine if Defendants' Policy constituted a rule under the APA.

### B. Legislative and Non-Legislative Rules

In general, agency action can be placed into two categories: legislative action and non-legislative action. *See Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014). Legislative action "supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy." *Mendoza v. Perez*, 754 F.3d at 1021; *see also Gen. Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) ("[I]f by its action the agency intends to create new law, rights or duties, the rule is properly considered to be a legislative rule."). Non-legislative action, on the other hand, explains or interprets a statute, or explains the agency's position with respect to how it will enforce a statute, but "does not itself purport to impose new obligations…on regulated parties." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014); *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). Importantly, legislative rules must be promulgated through notice and comment rulemaking procedures. *Mendoza v. Perez*, 754 F.3d at 1020–21 ("This court has generally referred to the category of rules to which the notice and comment requirements do apply as 'legislative rules' or, sometimes, 'substantive rules.'"). In contrast, the APA expressly states that non-legislative rules are exempt from notice and comment rulemaking. 5 U.S.C. § 553(b)(A); *see Nat'l Min. Ass'n v. McCarthy*, 758 F.3d at 250 ("[T]he APA does not require notice and comment for interpretive rules, general statements of policy, and rules of organization, procedure, or practice."). In regard to reviewability, the distinction between legislative rules and non-legislative rules is significant. *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d at 251. However, courts have frequently recognized that the distinction between these categories is

opaque and subtle. *See Pacific Gas & Electric Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974); *see also Syncor Int'l Corp. v. Shalala*, 127 F.3d at 90 (reviewing numerous D.C. Circuit cases and noting that the D.C. Circuit has long recognized the difficult distinction between substantive and interpretive rules); *see also Gen. Motors Corp. v. Ruckelshaus*, 742 F.2d at 1565 ("[T]he distinction between legislative and nonlegislative rules has been described as "enshrouded in considerable smog.'") (quoting *Noel v. Chapman*, 508 F.2d 1023, 1030 (2d Cir. 1975)); *see also American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987) (stating that "the spectrum between a clearly interpretive rule and a clearly substantive one is a hazy continuum").

The Court begins by explaining why Defendants' Policy does not constitute a legislative rule. In the present case, Plaintiff contends that the Policy is a legislative rule. Pl.'s Supp. Br., ECF No. 28, 9. In contrast, the Defendants contend that the action is not a legislative rule. Defs.'Supp. Br., ECF No. 29, 15. Plaintiff contends that Defendants' Policy constitutes a legislative rule "because [the Policy] had an immediate substantive effect on the rights and obligations of divorced retirees, removed OPM's discretion with respect to applying court orders dividing FERS benefits generally without express reference to the Annuity Supplement, and amounted to a substantive change of the regulatory scheme." Pl.'s Supp. Br., ECF No. 28, 9. While Defendants' Policy may have had an effect on the annuity payments received by retirees, the Court finds that the Policy does not amount to a legislative rule.

To determine whether a challenged policy constitutes a non-legislative or legislative rule, the court considers several factors. *CropLife Am. v. E.P.A.*, 329 F.3d 876, 883 (D.C. Cir. 2003). These factors include "whether the agency action (1) impose[d] any rights and obligations, or (2) genuinely le[ft] the agency and its decisionmakers free to exercise discretion." *Id.* (quoting *Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987) (internal quotations omitted). The

most important factor to consider when determining whether a challenged policy constitutes a non-legislative or legislative rule is "the actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d at 252 ("An agency action that purports to impose legally binding obligations or prohibitions on regulated parties— and that would be the basis for an enforcement action for violations of those obligations or requirements—is a legislative rule.").

In the present case, OPM's Policy left the agency and its decisionmakers unable to exercise discretion. This is evidenced by OPM's requirement that all supplemental annuities be divided the same way as basic annuities. The language used in the agency's notice is an indicator of whether or not the rule left the agency and its' decisionmakers unable to exercise discretion. *See CropLife Am. v. E.P.A*, 329 F.3d at 881. For example, "[t]he use of language like 'may' and 'should' instead of 'shall' or 'must' suggests that the provisions that follow are meant to be 'precatory, not mandatory.'" *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d at 718 (citing *Judd v. Billington*, 863 F.2d 103, 106 (D.C. Cir. 1988)). Here, OPM's Policy used mandatory language. The Policy required that all supplemental annuities be handled the same way. In doing so, OPM eliminated agency discretion. Language that is fully determinative of issues and rights, has generally been found to impose rights and obligations. *See CropLife Am. v. E.P.A.*, 329 F.3d at 881-83. Accordingly, the Plaintiff argues that the "Defendants' rule is a legislative rule that has the force and effect of law." Compl., ECF No. 1, ¶ 35.

Even though the Policy was mandatory, that is not the end of the analysis. A rule that "merely restates the requirements of a statute, on its face or as construed, need not be published, since it is the statutory directive, not the agency's interpretation, that governs in such cases." *Cathedral Candle Company v. International Trade Com'n*, 400 F.3d 1352, 1370 (Fed. Cir. 2005)

(finding that the International Trade Commission was exempt from the requirement to publish a reinterpretation in the Federal Register); *e.g., Kaspar Wire Works, Inc. v. Sec'y of Labor*, 268 F.3d 1123, 1132 (D.C. Cir. 2001) (concluding that a statutory requirement was clear and thus, the Secretary was not required to go through notice and comment rule making procedures to be able to enforce the language of the statute). Agency action that only seeks to restate a statute is not required to be published. *Id.* While the Policy eliminated agency discretion, it did so to ensure proper application of the statute. Accordingly, the obligations imposed on the affected retirees are the result of statutory directive and not the result of the Policy. Therefore, the Policy is not a legislative rule.

Instead, the Policy is a non-legislative rule. A rule that explains or interprets a statute, but "does not itself purport to impose new obligations or prohibitions or requirements on regulated parties." is considered a non-legislative rule. *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d at 252. Here, Defendants' Policy merely communicated the agency's interpretation of Section 8421(c). Defendants' Policy did not "adopt a new position inconsistent with existing regulations,…[r]ather, it simply issued internal guidance to certain of its employees concluding that the plain text of Section 8421(c) requires them to divide annuity supplements when processing court orders requiring the division of employee annuities." Defs.' Supp. Br., ECF No. 29, 3. The Policy sought to clarify and obtain "consistent and compliant apportionment." Defs.' Supp. Br., ECF No. 29, 2. However, the Policy itself did not impose new obligations. As such, Defendants' action constitutes a non-legislative rule.

The APA expressly states that non-legislative actions are exempt from the notice and comment procedures. 5 U.S.C. § 553(b)(A). As the Policy constitutes a non-legislative rule, Defendants were not required to engage in notice and comment procedures in implementing the

12

Policy. Accordingly, as notice and comment procedures were not required, the Court GRANTS

IN PART Defendants' Motion and DISMISSES Plaintiff's Count 2 claim that Defendants' action

was taken without observance of the required notice and comment procedures.

### C. Interpretive Rules and Statements of Policy

The Court has found that, as a non-legislative rule, Defendants were not required under

the APA to engage in notice and comment rulemaking. However, the fact that Defendants' action

constituted a non-legislative rule does not end the analysis of whether or not APA review is

available.

"[R]egulated entities are not without recourse" when non-legislative rules are issued.

*Perez v. Mortg. Bankers Ass'n,* 575 U.S. at 105. Non-legislative action can be further subdivided

into "interpretive rules, general statements of policy, and rules of organization, procedure, or

practice." *Nat'l Min. Ass'n v. McCarthy,* 758 F.3d at 250. In the case that a non-legislative,

interpretative rule is issued, "an affected party can seek judicial review pursuant to the

APA." *California Communities Against Toxics v. Envtl. Prot. Agency*, 934 F.3d 627, 635 (D.C.

Cir. 2019); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. at 106 (stating that "[t]he APA

contains a variety of constraints on agency decisionmaking—the arbitrary and capricious

standard being among the most notable"). Accordingly, the question becomes whether

Defendants' action constitutes an interpretive rule, for which APA review is available, or a

statement of policy, for which APA review is not available.

However, this question is not a simple one to answer. The distinction between

interpretive rules and policy statements is complicated by the tendency of many courts to use the

terms interchangeably when describing non-legislative action. *Syncor Int'l Corp. v. Shalala*, 127

F.3d at 94 (noting that this is a tendency that the D.C. Circuit has "succumbed on

occasion"); *see, e.g.*, *Community Nutrition Inst. v. Young,* 818 F.2d 943, 946 (D.C. Cir. 1987) (using the terms "interpretive rule" and "policy statement" interchangeably). However, interpretative rules and general statements of policy are distinctly different agency instruments. *Syncor Int'l Corp. v. Shalala*, 127 F.3d at 94.

Most importantly, non-legislative, interpretative rules can be reviewed pursuant to the APA for being arbitrary or capricious or in excess of authority, while policy statements are not subject to such APA review. *See* U.S.C. § 706(2)(A),(C); *e.g. Pharm. Research & Manufacturers of Am. v. United States Dep't of Health & Human Servs.,* 138 F. Supp. 3d 31 (D.D.C. 2015) (holding that an interpretive rule was a final agency action subject to review and that the interpretive rule was arbitrary and capricious); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) (stating that "[t]he Administrative Procedure Act…permits…the setting aside of agency action that is 'arbitrary' or 'capricious'").

The difference between an interpretive rule and a statement of policy is subtle. As stated in *Nat'l Min. Ass'n v. McCarthy*:

> As to interpretive rules, an agency action that merely interprets a prior statute or regulation, and does not itself purport to impose new obligations or prohibitions or requirements on regulated parties, is an interpretive rule...An agency action that merely explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule—is a general statement of policy.

*Nat'l Min. Ass'n v. McCarthy*, 758 F.3d at 252.

An agency action is not a statement of policy if it establishes a binding norm or "seek[s] to impose or elaborate or interpret a legal norm". *Syncor Int'l Corp. v. Shalala*, 127 F.3d at 94; *see also Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974) (stating that "a general statement of policy…does not establish a 'binding norm'"). An agency action establishes a binding norm when the action is retroactive. *Am. Bus Ass'n v. United States*,

627 F.2d 525, 529 (D.C. Cir. 1980) (stating "unless a pronouncement acts prospectively, it is a binding norm"). Conversely, a general statement of policy "merely represents an agency position with respect to how it will treat—typically enforce—the governing legal norm." *Syncor Int'l Corp. v. Shalala*, 127 F.3d at 94. For example, in *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33 (D.C. Cir. 1974), the Federal Power Commission ("FPC") issued a statement of general policy ("General Policy"). The General Policy was issued because many of the FPC's regulated entities were unsure about how to direct gas during periods of shortages. *Id.* at 35. The General Policy directed regulated entities to submit a curtailment plan to the FPC for approval. *Id.* at 35. The General Policy, along with a subsequent policy used to clarify the General Policy, suggested but did not require that all curtailment plans be created on the basis of the most efficient end use of the gas. *Id.* at 36. The General Policy also hinted that plans that did so would be more likely to receive approval. *Id.* The court held that the policy constituted a general statement of policy because the General Policy merely served as a guide and therefore, was not an inflexible, or binding rule. *Id.* at 40.

Plaintiff contends that, at a minimum, Defendants' action constitutes a non-legislative, interpretive rule that is ripe for judicial review. Pl.'s Supp. Br., ECF No. 28, 15. In contrast, the Defendants contend that the Policy "merely reiterated to operational employees what rights and obligations must be accorded to affected parties under 5 U.S.C. § 8421(c)" and is only a non-legislative, statement of policy. Defs.' Supp. Br., ECF No. 29, 20.

The Court concludes that Plaintiff is correct and that Defendants' Policy constitutes a non-legislative, interpretive rule, rather than a statement of policy. "An interpretative rule expresses the agency's view of what another rule, regulation or statute means." *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d at 37 n.14; *Perez v. Mortg. Bankers Ass'n*, 575 U.S. at 97

("[T]he critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.") (quoting *Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, 99 (1995)) (internal quotation marks omitted). In essence, an interpretative rule "purport[s] to define statutory terms." *Connecticut Dep't of Children & Youth Servs. v. Dep't of Health & Human Servs.*, 9 F.3d 981, 984 (D.C. Cir. 1993); *e.g.*, *Garelick Mfg. Co. v. Dillon*, 313 F.2d 899 (D.C. Cir. 1963) (holding regulations which attempted to clarify statutory terms to be interpretive in nature).

Here, the Policy does more than explain how Defendants will enforce a statute. Instead, Defendants interpreted the language of Section 8421(c) when Defendants "conclude[ed] that the plain text of Section 8421(c) require[d]…[OPM]…to divide annuity supplements when processing court orders requiring the division of employee annuities." Defs.' Supp. Br., ECF No. 29, 3. The Policy did not merely speak to how Defendants would enforce the statute, but instead, interpreted the statute and created an inflexible, binding norm. Because the Policy expressed OPM's view of the meaning of Section 8421(c), the Policy is an interpretive rule. Additionally, the Policy cannot be a general statement of policy because OPM sought to retroactively apply its interpretation of Section 8421(c). Pl.'s Supp. Br., ECF No. 28, 3-4; Defs.' Supp. Br., ECF No. 29, 7.

While interpretive rules are not subject to notice and comment procedures, the Supreme Court has previously "reassured regulated entities and regulatory beneficiaries that they are not without recourse should an agency – perhaps to evade notice and comment – repudiate a longstanding interpretive rule by way of a second interpretive rule." *California Communities Against Toxics v. Envtl. Prot. Agency*, 934 F.3d at 635 (referencing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. at 99). When an interpretive rule is issued, "an affected party can seek judicial

review pursuant to the APA." *Id.* Under the APA, a court shall "hold unlawful and set aside [final] agency action…found to be…arbitrary, capricious, an abuse of discretion, or…in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A),(C); *see* 5 U.S.C. § 704; *see Perez v. Mortg. Bankers Ass'n*, 575 U.S. at 106 (stating "[t]he APA contains a variety of constraints on agency decisionmaking—the arbitrary and capricious standard being among the most notable").

To be ripe for review, the non-legislative, interpretative action must also be final agency action. 5 U.S.C. § 704. An agency action is final and thus, ripe for review when the action is (1) the "consummation of the agency's decisionmaking process" and (2) a decision by which "rights or obligations have been determined." *Bennett v. Spear*, 520 U.S at 178 (internal quotation marks omitted). In the present case, Defendants' Policy is the final consummation of the agency's decision-making processing. Because neither party disputes that Defendants' action is final, this Court shall not further elaborate on this point.

Accordingly, because Defendants' Policy constitutes an interpretive rule, the Policy is subject to APA review and is not precluded by the CSRA. As such, the Court shall DENY Defendants' Motion to Dismiss as it relates to Count One and Count Three of the Plaintiff's claims. The Court has jurisdiction under the APA to review the Policy for being arbitrary and capricious or for being in excess of delegated authority.

### D.  Standing

Defendants' second argument for dismissing Plaintiff's Complaint is that Plaintiff lacks standing to bring the claims. Defendants' standing argument is largely derivative of their CSRA preclusion argument. Defendants contend that review of the Plaintiff's APA claims is precluded by the CSRA. As a consequence, the Defendants argue that that Plaintiff does not have

associational standing because "[n]o individual member of FLEOA would have standing to pursue plaintiff's claims in District Court because of the claims preclusion" under the CSRA. Defs.' Reply, ECF No. 18, 21.

However, for the reasons explained above, the Defendants' Policy constitutes an interpretive rule which is subject to APA review and is not precluded by the CSRA. Accordingly, the Plaintiff has associational standing to bring APA claims challenging the Policy on behalf of its members.

### E. Request for Stay

Additionally, Defendants request a stay of the action if this Court finds that the claims are not precluded by the CSRA. Defendants contend that "the Court [should] stay further litigation…until one or both of the two matters now pending before MSPB become the subject of a final decision." Defs.' Supp. Br., ECF No. 29, 4. Defendants maintain that a stay is necessary to prevent "inconsistent rulings from this Court and the MSPB and its reviewing courts." *Id.* at ¶ 8.

This Court concludes that review under the APA is not fully precluded by the CSRA. However, presently, it is unclear when any appeal will be heard by the MSPB. Additionally, the D.C. Circuit regularly hears and decides APA cases (many regarding pre-enforcement rulemaking review under the APA). Because of that, the expertise of the MSPB is not required. The court shall not grant a stay at this time.

## IV.    CONCLUSION

For the reasons set forth above, the Court shall GRANT IN PART AND DENY IN PART Defendants' Motion to Dismiss. The Court DENIES Defendants' Motion as it relates to Count One and Count Three of Plaintiff's Complaint. Because Defendants' Policy constitutes an

interpretive rule, the Policy is subject to APA review for being arbitrary and capricious or for being in excess of delegated authority. However, the Court GRANTS Defendants' Motion as it relates to Count Two of Plaintiff's Complaint as the Policy is not a legislative rule requiring notice and comment procedures.

An appropriate Order accompanies this Memorandum Opinion.

                                    /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge